UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CONNOR Q. SAVADA,

      Plaintiff,

  v.                                               Case No. 19-C-351

JASON MEISNER,
DAVID MARNENIN,
AMANDA BARTZ, and
LINCOLN COUNTY SHERIFF'S DEPARTMENT JAIL,

      Defendant.

## SCREENING ORDER

Plaintiff Connor Savada, who is currently being detained at the Lincoln County Jail and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on Savada's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

**MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

Savada submitted his complaint, accompanied by a "Prisoner Request To Proceed In The District Court Without Prepaying The Full Filing Fee," to the Clerk on March 8, 2019. Dkt. Nos. 1– 2. Since he was not in custody at the time he submitted his request, Savada was not subject to the Prison Litigation Reform Act (PLRA), which requires payment of an initial partial filing fee with the balance to be paid over time. 28 U.S.C. § 1915(a)(2) and (b). Confused by the forms he had completed, the Clerk initially sent a letter directing Savada to file a certified copy of his institutional trust account statement for the last six months. Dkt. No. 3. The Clerk later realized

Savada was not a prisoner and sent a second letter on March 15, 2019, directing him to file a motion for leave to proceed without prepayment of the full filing fee (*in forma pauperis*) within the next 21 days. Dkt. No. 4. On April 15, 2019, Savada sent a letter advising the court that he was again in jail and had not been receiving his mail. Savada requested that "any missed deadlines be forgiven and I re-file as an incarcerated person filing in forma pauperis." Dkt. No. 5. Since the "Prisoner Request To Proceed In District Court Without Prepaying The Full Filing Fee" that accompanied his complaint is sufficient to establish his indigency, I will grant his request to proceed without paying the filing fee and screen Savada's complaint to determine whether it states a claim.

## SCREENING OF THE COMPLAINT

Although for the reason set forth above this case is not governed by the PLRA, the court is authorized "to screen complaints filed by all litigants, prisoners and nonprisoners alike, regardless of fee status." *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) (citing 28 U.S.C. § 1915(e)(2)(B)). This is to insure that people named as defendants in suits brought by individuals with no education or training in the law are not forced to incur the expense of hiring a lawyer to defend them in a federal suit that has no basis in the law. It also frees up judicial resources for cases involving serious disputes over colorable claims. A court should therefore dismiss a complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). To survive screening, the complaint must state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, it must allege sufficient facts to permit "the reasonable inference that defendant is liable for the injury alleged." *Id.* In determining whether a complaint states a claim, the court accepts all of the plaintiff's allegations as true and gives them a liberal construction when the plaintiff is proceeding *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, the

2

complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

## ALLEGATIONS OF THE COMPLAINT

In December of 2017, Savada was taken into custody for two or three days on a misdemeanor non-appearance bench warrant that was issued when he failed to appear for a status conference. Although Savada claims that he was unaware of the status conference, there is no allegation that the warrant was invalid. While he was being booked at the Lincoln County Jail, Savada alleges that two members of the Lincoln County Sherriff's Office Correctional staff—Jason Meisner and a Jane Doe officer—slammed him to the floor of a cell in the holding area while both of his arms were being held behind his back. Savada alleges that this was done because he was refusing to answer personal health questions while he was being booked. Savada further alleges that these staff members also mocked him and made a facial gesture to him indicating that they could "accidentally forget" to inform the court that he was available to appear while he was in their custody. Dkt. No. 1 at 4.

Ten minutes later Meisner allegedly approached Savada's cell and asked if he needed or wanted any medical care. Savada states that he declined any medical care despite injuries to his knees and one elbow out of fear that he would be harmed again by Meisner and the officers would act on their threat not to inform the court that he was available to appear. Savada also states that he was afraid to ask for assistance because of the jail's close proximity to Lincoln Hills and Copper Lake and his belief "that these people, and this location are dangerous and willing to violate the Constitution." *Id.* at 5.

Savada also alleges that he was denied access to prescription medication related to his recovery from an infection. Savada states that the jail's staff was informed and aware of his recent illness and injury. Savada alleges that, at some point during his time at the jail, when he called out to a Jane Done nurse the nurse ran away from him. Savada is seeking monetary relief.

**THE COURT'S ANALYSIS**

Because Savada's arrest took place pursuant to a bench warrant, "this case concerns detention following a judicial determination of sufficient cause." *Armstrong v. Squadrito*, 152 F.3d 564, 569–70 (7th Cir. 1998). Consequently, his claims are analyzed under the due process clause of the Fourteenth Amendment. *See Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992) (The Fourth Amendment "governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause.").

The standard for judging an excessive force claim under the due process clause, like the standard under the Fourth Amendment, is objective unreasonableness. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2471 (2015). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973)). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably

perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2473.

Taking Savada's allegations as true, which the court must do at this stage, his complaint states a claim for excessive force against Jason Meisner and the Jane Doe officer. Slamming an inmate to the floor of a jail simply because he refuses to answer questions is not objectively reasonable, and no person should condone such brutality. But allegations, especially uncorroborated allegations, are not proof, and relieving an indigent inmate of even the burden of paying the filing fee eliminates any incentive the inmate might otherwise have not to file false or exaggerated claims. True, one of the factors to be considered in determining whether the force used was unreasonably excessive is the extent of the plaintiff's injury. This makes sense if the Court's statement acknowledging that "not every push or shove" will amount to a constitutional violation is to serve as any kind of a meaningful limitation on the ability of an inmate to force his jailers to incur the expense of defending a federal lawsuit. But the Court has also said that while the absence of serious injury is relevant to the constitutional inquiry, it does not end it. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Thus, even though Savada has alleged injury in only the most conclusory fashion, this is sufficient under the law for the case to proceed on his excessive force claim against jail officers Meisner and Doe.

Regarding Savada's claim that he was denied access to his prescription medication and a Jane Doe nurse avoided him when he called out for her, the same deliberate indifference standard applied under the Eighth Amendment is applied to deliberate indifference claims brought under the Fourteenth Amendment's due process clause. *See Rosario v. Brawn*, 670 F.3d 816, 820–21 (7th Cir. 2012) (stating that "the same deliberate indifference standard" is applied in causes brought

5

under the Eighth Amendment and under the Fourteenth Amendment's due process clause). In order to establish a claim of deliberate indifference, a plaintiff must show that he had a serious medical need and that jail officials were deliberately indifferent to that need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Savada's complaint supports a claim of deliberate indifference for the denial of his medication because jail personnel are prohibited from "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004). Savada alleges the jail staff was aware that he was on prescription medication and deliberately chose not to provide him with access to it. But the complaint fails to identify who on the jail staff were responsible for failing to provide Savada his medication. Suing generic "jail staff" does not provide notice to those responsible. Accordingly, this claim will be dismissed without prejudice with the understanding that if Savada intends to proceed with it, he must identify by name the specific members of the jail staff who were responsible. If he does not know, he should use the discovery process to learn their names and request leave to file an amended complaint once he has done so.

Regarding Savada's claim against the Jane Doe nurse for turning away from him after he called out to her, his complaint does not establish that the nurse had actual knowledge of the existence of a substantial risk of harm to him and deliberately disregarded that risk. Here, Savada merely called out to a nurse who then proceeded to turn away from him in response. Savada's complaint does not establish that this nurse was even aware of any substantial need for medical care.

Finally, turning to David Marnenin, Amanda Bartz, and the Lincoln County Sheriff's Department Jail, these defendants will be dismissed as Savada has failed to state a claim against

6

them. Liability under § 1983 does not attach unless the individual defendant caused or participated in the constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Savada's complaint does not explain how Marnenin or Bartz caused or participated in the alleged violations of his constitutional rights. Regarding the Lincoln County Sheriff's Department Jail, 42 U.S.C. § 1983 applies to persons, and the jail is not a person for purposes of the statute. *See* 42 U.S.C. § 1983 ("Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .") (emphasis added).

The court finds that Savada may proceed on the following claims: excessive force against Jason Meisner and the Jane Doe officer. Savada is advised that he should use discovery to identify the Doe defendants and may seek assistance from the court if he is unable to discover their names on his own. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). Any amendment adding additional parties must be filed within 120 days of the defendant's answer to the complaint.

**IT IS THEREFORE ORDERED** that Savada's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that David Marnenin, Amanda Bartz, and the Lincoln County Sheriff's Department Jail are **DISMISSED**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Defendant Jason Meisner pursuant to Federal Rule of Civil Procedure 4. Savada is advised that Congress requires the U.S. Marshals Service to charge for making or

attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2)–(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS FURTHER ORDERED** that the defendant shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that copies of the complaint and this order be sent to the administrator of the Lincoln County Sheriff's Department Jail, as well as to the Lincoln County Sheriff and the Lincoln County Corporation Counsel.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that Savada shall submit all correspondence and legal material to:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Savada is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties. Therefore, failure to provide your correct address could result in dismissal of your case for failure to prosecute.

Dated at Green Bay, Wisconsin this  23rd  day of April, 2019.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court
